**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NICOLE C., on behalf of V.M.C.,**

                **Plaintiff,**

       v.                                               1:17-CV-456
                                                            (FJS)

**NANCY BERRYHILL, in her Official Capacity**
**as Acting Commissioner of the Social Security**
**Administration,**

                **Defendant.**
_____

**APPEARANCES**                                        **OF COUNSEL**

**LEGAL AID SOCIETY OF**                **MARY MARTHA WITHINGTON, ESQ.**
**NORTHEASTERN NEW YORK**
40 New Street
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **DANIELLA M. CALENZO, ESQ.**
**OFFICE OF REGIONAL GENERAL**
**COUNSEL - REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Nicole C. brought this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying her application for Supplemental Security Income ("SSI") on behalf of V.M.C. *See generally* Dkt. No. 1 ("Complaint"). Pending before the Court are the

parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 9, 14.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed an application for SSI under Title XVI of the Social Security Act on V.M.C.'s behalf on August 29, 2008, alleging V.M.C.'s disability as of August 1, 2008. *See* Dkt. No. 8, Administrative Record ("AR"), at 34.[1] The Social Security Administration denied the application on January 28, 2009. *See id.* at 75. Plaintiff timely filed a written request for a hearing, which was held before Administrative Law Judge Arthur Patane ("ALJ") in Albany, New York, on December 22, 2010. *See id.* at 55-74. Plaintiff testified on V.M.C.'s behalf, and V.M.C. also testified. *See id.*

On February 3, 2011, the ALJ issued his decision, in which he made the following findings "[a]fter careful consideration of the entire record":

> (1) V.M.C. was born on February 2, 2001, meaning that she was a school-age child at the time the application was filed on August 29, 2008, and was a school-age child at the time the decision was issued. *See* 20 C.F.R. § 416.926a(g)(2).
>
> (2) V.M.C. did not engage in substantial gainful activity at any time relevant to the decision. *See* 20 C.F.R. §§ 416.924(b), 416.971 *et seq.*
>
> (3) V.M.C. had the following severe impairments:
>     (a) Autism
>     (b) Asperger's Syndrome
>     (c) Attention deficit hyperactivity disorder ("ADHD")
>     (d) A sleep disorder (problems sleeping)
> *See* 20 C.F.R. § 416.924(c).

---

[1] References to page numbers in the Administrative Record are to the page numbers at the bottom-right of those pages. References to page numbers in all other documents in the record are to the page numbers that the Court's Electronic Case Filing system generates.

> (4) V.M.C. did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.924, 416.925, 416.926.
>
> (5) V.M.C. did not have an impairment or combination of impairments that functionally equaled the listings. *See* 20 C.F.R. §§ 416.924(d), 416.926a.
>
> (6) V.M.C. was not disabled, as defined in the Social Security Act, since August 29, 2008, the date the application was filed. *See* 20 C.F.R. § 416.924(a).

*See* AR at 37-50.

The ALJ reasoned that V.M.C.'s impairments were severe because they had "more than a minimal impact" on her ability to function. *See id.* at 37. With regard to his finding that V.M.C. did not have an impairment or condition that met or medically equaled one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P, the ALJ reasoned "that the impairment is not attended with the specific clinical signs and diagnostic findings required to meet the requirements set forth in any of the child or adult listings of Appendix 1 to Subpart P, 20 CFR Part 404." *See id.*

Regarding his finding that V.M.C. did not have an impairment or combination of impairments that functionally equaled the listings, the ALJ discussed each of the six domains of function, including the following: attending and completing tasks, interacting and relating with others, and caring for oneself. *See id.* at 37-50. As a result of his analysis, the ALJ found that V.M.C. suffered less than marked limitations with respect to each of the domains of function except health and physical well-being, for which he found no limitation. *See id.*

The ALJ's decision became the Commissioner's final decision on September 11, 2013, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 539.

Plaintiff then commenced a civil action in this District on October 15, 2013, seeking judicial review of the Commissioner's final decision. *See* AR at 546-53; *Nicole C. v. Colvin*, 1:13-CV-1414 ("2013 Action"). While that matter was pending, Plaintiff filed a subsequent application for SSI benefits for V.M.C. on November 5, 2013. *See* Dkt. No. 1 ("Complaint") at ¶ 14. That application was consolidated with the prior application. *See id.* In a Report and Recommendation dated January 30, 2015, Magistrate Judge Hines recommended that the court (Sharpe, J.) reverse and remand the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) to consider new evidence and for further proceedings. *See* AR at 558-79. Specifically, Magistrate Judge Hines recommended that the court remand the case so that the Commissioner could consider V.M.C.'s educational records recommending her reclassification in special education. *See id.* at 575-76. The parties did not file any objections to Magistrate Judge Hines' recommendation; and, by Order dated March 12, 2015, the court (Sharpe, J.) accepted the recommendation and reversed and remanded the case. *See id.* at 556-57.

As a result of the remand, a second administrative hearing was held before ALJ Arthur Patane in Albany, New York, on September 28, 2016. *See* AR at 452-78. Plaintiff testified on V.M.C.'s behalf, and V.M.C. also testified. *See id.* at 454-78. On October 13, 2016, the ALJ issued his decision, in which he made the following findings "[a]fter careful consideration of the entire record":

> (1) V.M.C. was born on February 2, 2001, meaning she was a school age child at the time the application was filed on August 29, 2008, and was an adolescent at the time the decision was issued. *See* 20 C.F.R. § 416.926a(g)(2).
>
> (2) V.M.C. did not engage in substantial gainful activity at any time relevant to the decision. *See* 20 C.F.R. §§ 416.924(b), 416.971 *et seq.*

      (3) V.M.C. had the following severe impairments:
          (a) Autism
          (b) Asperger's Syndrome
          (c) Attention Deficit Hyperactivity Disorder ("ADHD")
          (d) Oppositional Defiant Disorder
          (e) A sleep disorder (problems sleeping)
*See* 20 C.F.R. § 416.924(c).

      (4) V.M.C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.924, 416.925, 416.926.

      (5) V.M.C. did not have an impairment or combination of impairments that functionally equaled the severity of the listings. *See* 20 C.F.R. §§ 416.924(d), 416.926a.

      (6) V.M.C. was not disabled since August 29, 2008, the date her original application was filed. *See* 20 C.F.R. § 416.924(a).

*See* AR at 428-40.

The ALJ reasoned that V.M.C.'s impairments were severe because the conditions caused "more than minimal . . . limitations" on her ability to function. *See* AR at 428. With regard to his finding that V.M.C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P, the ALJ reasoned that "[t]he record fail[ed] to document the specific clinical, diagnostic, or objective findings set forth in the regulations for meeting a listed impairment and no accepted medical source of record ha[d] opined that the claimant's impairments m[et] or medically equal[ed] any listed impairments." *See id.*

Regarding his finding that V.M.C. did not have an impairment or combination of impairments that functionally equaled the listings, the ALJ discussed each of the six domains of function, including the following: attending and completing tasks, interacting and relating with

others, and caring for oneself. *See id.* at 428-40. As a result of this analysis, he found that V.M.C. suffered less than marked limitations with regard to each of the domains of function except health and physical well-being, for which he found no limitation. *See id.* The ALJ's decision became the Commissioner's final decision on February 21, 2017, when the Appeals Council of the Social Security Administration declined to accept jurisdiction. *See id.* at 415. Plaintiff then commenced this action on April 25, 2017, and filed a supporting brief on September 21, 2017. *See* Dkt. Nos. 1, 9. Defendant filed a responsive brief on February 7, 2018. *See* Dkt. No. 14.

Plaintiff advances three arguments in support of her motion. First, she argues that the ALJ erred in failing to find that V.M.C.'s combination of Autism, ADHD, and sleep disorder met or equaled Listing 112.10 for Autistic Disorder and Other Pervasive Developmental Disorders. *See* Dkt. No. 9 at 17-21. Second, Plaintiff asserts that the ALJ erroneously found that V.M.C.'s impairments did not constitute marked impairments in the domains of attending and completing tasks, interacting and relating with others, and caring for oneself. *See id.* at 22-24. Third, she argues that the ALJ's decision is against the substantial weight of the evidence and is incorrect as a matter of law. *See id.* at 24-25.

### III. DISCUSSION

**A.  Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence in the record to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "more than a mere scintilla" of evidence and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

The SSI program provides benefits to eligible aged, blind, or disabled individuals who meet certain criteria. *See generally* 42 U.S.C. § 1381 *et seq.*; *Colon v. Apfel*, 133 F. Supp. 2d 330, 336-42 (S.D.N.Y. 2001). The Social Security Administration has established a three-part test for determining whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a). First, the claimant must not be engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). Second, the claimant must suffer from a medically determinable severe impairment or combination of impairments that are severe. *See* 20 C.F.R. § 416.924(c). Finally, a claimant must suffer from an impairment that meets or medically equals one of those listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P ("Listings"). *See* 20 C.F.R. § 416.924(d). A claimant may also satisfy the third element where the Commissioner finds that her impairment or combination of impairments functionally equals one or more of those in the Listings. *See id.* Any such disability must also meet a durational requirement. *See id.*

In this case, Plaintiff does not dispute the ALJ's findings with regard to the first two parts of the test. Accordingly, the Court only needs to address the ALJ's findings with regard to the third part of the test, *i.e.,* that V.M.C. was not entitled to a finding of presumptive disability under Listing 112.10 and that V.M.C.'s combination of impairments were not functionally equal to one or more of those in the listings under 20 C.F.R. § 416.926a(a).

**B.    The ALJ's finding of no presumptive disability based on Listing 112.10**

Plaintiff claims that the ALJ erred in failing to find that V.M.C.'s combination of Autism, ADHD, and sleep disorder did not meet or equal the requirements of Listing 112.10, the impairment of autism spectrum disorder. *See* Dkt. No. 9 at 17-21. The Listing at issue provides as follows:

> 8. Autism spectrum disorder (112.10)
> a. These disorders are characterized by qualitative deficits in the development of reciprocal social interaction, verbal and nonverbal communication skills, and symbolic or imaginative play; restricted repetitive and stereotyped patterns of behavior, interests, and activities; and stagnation of development or loss of acquired skills. Symptoms and signs may include, but are not limited to, abnormalities and unevenness in the development of cognitive skills; unusual responses to sensory stimuli; and behavioral difficulties, including hyperactivity, short attention span, impulsivity, aggressiveness, or self-injurious actions.
>
> b. Examples of disorders that we evaluate in this category include autism spectrum disorder with or without accompanying intellectual impairment, and autism spectrum disorder with or without accompanying language impairment.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(B)(8).

In order for a claimant to meet the requirements of Listing 112.10, the mental disorder "must satisfy the requirements of both paragraphs A and B." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(A)(2). Plaintiff does not specifically argue that there is sufficient evidence to show that V.M.C.'s impairments meet the Listed requirements for qualitative deficits of "symbolic or imaginative play." *See* Dkt. No. 9 at 19-20. Moreover, there is sufficient evidence in the record to support the ALJ's conclusion that V.M.C. did not meet or equal the requirements of Listing 112.10.

The ALJ clearly considered all of the relevant evidence in the record before reaching his decision. He set forth detailed narrative summaries of the testimony of Plaintiff and V.M.C. from both the hearing on December 22, 2010, and the hearing on September 28, 2016; considered diagnoses, opinions, and progress notes of V.M.C.'s pediatrician, Scott C. Bello, M.D., F.A.A.P.;

the opinion of non-examining State agency pediatric consultant, Lori Brandon Souther, Ph.D.; educational records; questionnaires that teachers had prepared, *e.g.*, Ms. Weaver, Ms. Parker and Ms. Leroy; conclusions of school psychologists, Hope Saulter, Ph.D. and Heather B. Ovitt, M.A., C.A.S.; and the psychiatric records of Thomas Osika, Ph.D. *See* AR at 429-33.

After reviewing the record, the ALJ concluded that no medical source of record had "opined that the claimant's impairments [met] or medically equal[ed] any listed impairments." *See id.* at 428. Specifically, Dr. Souther concluded on January 28, 2009, that V.M.C.'s "impairments [were] severe, but d[id] not meet [or] medically equal . . . the Listings." *See id.* at 384. Although Dr. Bellow, V.M.C.'s doctor opined that V.M.C. had high functioning autism, he did not state that her impairments met or medically equaled Listing 112.10. *See id.* at 411. School psychologist, Hope Saulter, Ph.D., had the opportunity to examine V.M.C. directly and confirmed a diagnosis of autism spectrum disorder but characterized the condition as relatively mild and, like Dr. Bello, described V.M.C. as "high functioning." *See id.* at 349. Dr. Osika, Ph.D., reported a global assessment of function ("GAF") score of 55, which, according to the DSM-IV, is consistent with moderate (less than serious) symptoms or impairment in social, occupational, or school functioning. *See id.* at 409-12. Plaintiff and V.M.C.'s testimony at the two hearings, as well as V.M.C.'s teacher questionnaires, indicated some deficits but not marked or extreme limitations in functioning to meet all of the requirements in Listing 112.10. *See id.* at 55-74, 161-87, 273-84, 452-78. Thus, the Court concludes that the record overwhelmingly supports the ALJ's conclusion that there is no specific clinical, diagnostic, or objective findings to demonstrate that V.M.C.'s impairments meet or medically equal the requirements set forth in Listing 112.10.

**C.     Finding of no impairment functionally equivalent to a listed impairment**

The third step of the disability analysis for children seeking SSI benefits involves the question of whether the claimant's impairment or combination of impairments functionally equals a listed impairment. *See generally* 20 C.F.R. § 416.926a. To meet the functional equivalence standard, the claimant's impairments or combination of impairments must be "marked" in two domains of functioning or "extreme" in one domain. *See* 20 C.F.R. § 416.926a(a). "Marked" limitation in this context means serious interference with the claimant's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i). In addition, unless the impairment is expected to result in death, it must meet the durational requirement, *i.e.*, that the impairment has lasted or is expected to last for a "continuous period of at least 12 months." 20 C.F.R. § 416.909. Finally, the regulations require the ALJ to "examine all the information . . . in [the] case record about how [claimant's] functioning is limited because of [claimant's] impairment(s), and . . . compare [claimant's] functioning to the typical functioning of children [claimant's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1).

Plaintiff does not assert that V.M.C. has an extreme impairment in one domain. Rather, she claims that the ALJ committed reversible error when he failed to find that V.M.C. had marked limitations in the domains of attending and completing tasks, interacting and relating with others, and caring for oneself. *See* Dkt. No. 9 at 22-24.

The domain of attending and completing tasks considers "how well [the claimant is] able to focus and maintain [her] attention, and how well [the claimant] begin[s], carr[ies] through, and finish[es] [her] activities, including the pace at which [the claimant] perform[s] activities and the ease with which [the claimant] change[s] them." 20 C.F.R. § 416.926a(h). In general, the

regulations provide that a school-age child without an impairment "should be able to focus [her] attention in a variety of situations in order to follow directions, remember and organize [her] school materials, and complete classroom and homework assignments." 20 C.F.R. § 416.926a(h)(2)(iv). Further, the regulations provide that an adolescent without an impairment "should be able to pay attention to increasingly longer presentations and discussions, maintain [her] concentration while reading textbooks, and independently plan and complete long-range academic projects." 20 C.F.R. § 416.926a(h)(2)(v). Examples of limited function that children of different ages might have, which do not necessarily describe a marked or extreme limitation, include repeatedly being side-tracked from activities, requiring extra supervision to remain engaged in an activity, or failing to finish tasks one is capable of completing. *See* 20 C.F.R. § 416.926a(h)(3)(iii), (iv), (v).

The ALJ concluded that V.M.C. had a less than marked limitation in this domain.[2] *See* AR at 434-36. Specifically, in his October 13, 2016 decision, the ALJ determined that V.M.C. had a longstanding diagnosis of ADHD, but "medical records dated after the previous ALJ decision [dated February 3, 2011] consistently indicate that her ADHD and other conditions are stable on medication and that she is able to focus and maintain attention when taking her medications." *See id.* at 435. Additionally, the ALJ noted that, in October 2010, a state medical consultant assessed V.M.C. with less than marked difficulty in this area, which is "consistent with multiple teacher reports and IEP records and is not contradicted by any other medical opinion evidence of record." *See id.* at 435-36.

Based on its review of the record, the Court finds that there is substantial evidence in the

---

[2] The ALJ similarly concluded that V.M.C. had a less than marked limitation in the domain of attending and completing tasks at the time he rendered his February 3, 2011 decision. *See* AR at 44-45.

record to support the ALJ's finding that V.M.C. had a less than marked limitation in the domain of attending and completing tasks.

The second domain at issue is interacting and relating with others. This domain considers "how well [the claimant] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). In general, the regulations provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age. *See* 20 C.F.R. § 416.926a(i)(2)(iv). The child "should begin to understand how to work in groups to create projects and solve problems . . . and to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." *Id.* Further, the regulations provide that an adolescent without an impairment "should be able to initiate and develop friendships with children of [the same] age and to relate appropriately to other children and adults, both individually and in groups." 20 C.F.R. § 416.926a(i)(2)(v). In addition, an adolescent should be increasingly able to solve conflicts with peers, family members, or adults outside of the family. *See id.* Examples of limited function that children of different ages might experience, which do not necessarily describe a marked or extreme limitation, include having no close friends, difficulty communicating with others, or being overly anxious or fearful of meeting new people or trying new experiences. *See* 20 C.F.R. § 416.926a(i)(3), (ii), (iii), (v).

The ALJ concluded that V.M.C. had a less than marked limitation in this domain. *See* AR at

436-37.³  Specifically, in his October 13, 2016 decision, the ALJ determined that, although V.M.C. had a long history of behavioral issues, *see, e.g.*, AR at 437, these were consistent with moderate functional limitations, *see id.* at 433.

The Court's review of the record demonstrates that there is sufficient evidence to support the ALJ's conclusion that the record does not support a finding of a marked or extreme limitation in this domain for a continuous 12-month period. *See id.* at 437. Specifically, second grade teachers noted that V.M.C. "initially displayed significant difficulties with social functioning but showed steady improvement within a structured setting." *See id.* By third grade, V.M.C.'s teacher "did not report any obvious or serious difficulties in this domain." *See id.* "More recently, in late 2013, a consultative examiner[, Dr. Osika, Ph.D.,] . . . reported a GAF score of 55, which is consistent with, at most, a moderate (less than serious) limitation in social functioning." *See id.* Finally, at the September 28, 2016 hearing, V.M.C. testified that she got along well with her teachers and her little brother, had a few close friends, and had played a team sport for the past three years. *See id.*

Based on its review of the record, the Court finds that there is substantial evidence in the record to support the ALJ's finding that V.M.C. has a less than marked limitation in the domain of interacting and relating with others.

The final domain at issue is caring for oneself. This domain considers "how well [the claimant] maintain[s] a healthy emotional and physical state, including how [she] get[s] [her] physical and emotional wants and needs met in appropriate ways; how [she] cope[s] with stress and changes in [her] environment; and whether [she] take[s] care of [her] own health, possessions, and

---

³ Similarly, the ALJ concluded that V.M.C. had a less than marked limitation in the domain of interacting and relating with others in his February 3, 2011 decision. *See* AR at 45-46.

living area." 20 C.F.R. § 416.926a(k). In general, the regulations provide that a school-age child without an impairment "should be independent in most day-to-day activities . . . although [she] may still need to be reminded sometimes to do these routinely." 20 C.F.R. § 416.926a(k)(2)(iv). The child "should begin to develop [an] understanding of what is right and wrong, . . . and should begin to demonstrate consistent control over [her] behavior." *Id.* Further, the regulations provide that an adolescent without an impairment "should feel more independent from others and should be increasingly independent in all of [her] day-to-day activities." 20 C.F.R. § 416.926a(k)(2)(v). The adolescent should begin to develop appropriate ways to express her feelings, both good and bad. *See id.* Examples of limited function that children of different ages might have, which do not necessarily describe a marked or extreme limitation, include the failure to dress or bathe themselves age-appropriately, engaging in self-injurious behavior, or disturbances in eating or sleeping patterns. *See* 20 C.F.R. § 416.926a(k)(3)(iii), (iv), (vi).

With regard to this domain, the ALJ found that V.M.C. had a less than marked limitation.[4] *See* AR at 439. Specifically, the ALJ noted in his October 13, 2016 decision that the record documented multiple medical sources that had identified difficulties in V.M.C.'s ability to perform self-care but none could reasonably be interpreted as "suggestive of marked or extreme difficulties in this area." *See id.* The Court's review of the record demonstrates that there is sufficient evidence in the record to support the ALJ's conclusion that the weight of the evidence is inconsistent with a finding of marked or extreme difficulties in this domain. Specifically, V.M.C.'s third grade teacher and the state medical consultant of record "did not assess the claimant with marked deficits in this

---

[4] Similarly, the ALJ concluded that V.M.C. had a less than marked limitation in the domain of caring for herself at the time that he issued his February 3, 2011 decision. *See* AR at 48-49.

area, and the consultative examiner who saw [V.M.C.] more recently assessed a moderate spectrum of GAF score, which is not suggestive of marked difficulties in self care or any other areas." *See id.*

Based on its review of the entire record, the Court finds that there is substantial evidence in the record to support the ALJ's finding that V.M.C. had a less than marked limitation in the domain of caring for herself.

**D.     Issue regarding "new evidence"**

Plaintiff argues that, if the Court does not agree with her that it should reverse the ALJ's decision, the Court should, as an alternative, vacate the ALJ's decision and remand the matter for a *de novo* hearing. *See* Dkt. No. 9 at 25. Plaintiff bases this argument on new evidence that she presented after the ALJ rendered his October 13, 2016 decision. This new evidence consists of a draft Individualized Educational Plan and Psychoeducational Evaluation dated November 2, 2016, and the statement of V.M.C.'s mother, in which "she described the change being made to the number of tutorial classes [V.M.C.] is to be provided." *See* Dkt. No. 1 at ¶ 20.

Examinations and testing "conducted after the ALJ's decision is rendered may still be relevant if they clarify a pre-hearing disability and/or diagnoses." *Sears v. Colvin*, No. 8:12-CV-570, 2013 WL 6506496, *6 (N.D.N.Y. Dec. 12, 2013) (citation omitted). When reviewing a denial of SSI benefits, the Appeals Council may consider "new and material"[5] evidence that the plaintiff

---

[5] Congress acted in 1980 to limit the power of district courts to order remands for "new evidence" in Social Security cases. *See Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). Reviewing courts may now order that additional evidence be taken before the Commissioner "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). Consistent with the 1980 Amendment, the Commissioner promulgated a regulation
(continued...)

presents. Reviewing courts may order that "'additional evidence be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (quoting 42 U.S.C. § 405(g)); *see also* 20 C.F.R. § 416.1470(b). New evidence must not be merely "'cumulative of what is already in the record.'" *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (quotation omitted). Material evidence is evidence that is probative and relevant to the claimant's condition during the time period for which benefits were denied. *See id.* (citation omitted). Also, to be material, the evidence must present "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [the] claimant's application differently." *Id.* (citations omitted).

      The additional evidence that Plaintiff submitted for review is new. There is also clearly good cause for the failure to incorporate this evidence into the record previously, *i.e.*, it did not exist at the time that the ALJ issued his decision on October 13, 2016. However, based on its review of the record, the Court finds that the new evidence is not material because an insufficient basis exists to conclude that there is a reasonable possibility that the Commissioner would have decided V.M.C.'s application differently based on this new evidence. Plaintiff submitted this new evidence to the Appeals Council, which considered it and determined that, although it was relevant, it did not change the weight of the evidence. *See* AR at 416. The Court agrees with this assessment.

---

      [5](...continued)
relating specifically to the Appeals Council's review of new evidence. The regulation provide provides that "[t]he Appeals Council will review a case if – . . . the Appeals Council receives additional evidence that is new, material, and *relates to the period on or before the date of the hearing decision*, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5) (emphasis added).

The new educational assessment on which Plaintiff relies is cumulative of information that is already in the record and which the ALJ considered. Plaintiff asserts that the new evidence "indicate[s] far greater problems in functioning than prior assessments." *See* Dkt. No. 9 at 25. However, this is not the case. The new educational assessment examines the results of V.M.C.'s WISC-IV examination results. *See* AR at 1467. V.M.C. received average scores for verbal comprehension, perceptual reasoning, and working memory; below average for full scale; and borderline for processing speed. *See id.* Although the scores on their own are not sufficient to support a conclusion that there is a reasonable possibility that this new evidence would influence the Commissioner to decide V.M.C.'s application differently, its is also important to examine the results of the WISC-IV testing conducted in November 2012. This examination indicated average scores for verbal comprehension and working memory and below average scores for perceptual reasoning, processing speed, and full scale. *See id.* at 1201. Although V.M.C.'s processing speed score decreased in the four-year period between the two examinations, her perceptual reasoning score increased. *Compare* AR at 1201 *with* AR at 1467. When evaluated as a whole, V.M.C.'s composite scores in 2012 and 2016 are very similar.

Additionally, several of V.M.C.'s teachers in the new educational assessment speak positively of her educational and social progress. Although Plaintiff argues that the most recent evidence indicates "far greater problems in functioning than prior assessments and is compelling evidence [that V.M.C.]'s functioning across several domains is markedly impaired," the reports of V.M.C.'s teachers do not support her argument. *See* Dkt. No. 9 at 25. Mr. Preston, V.M.C.'s Earth Science teacher, noted that V.M.C. "has difficulty" in several areas, including "following directions, following rules, [and] being motivated." *See* AR at 1463. However, Mr. Nassivera, V.M.C.'s

physical education teacher, stated that V.M.C. was "actively participating in PE class without any issues or concerns." *See id.* at 1464. Ms. Bundas, V.M.C.'s study hall teacher, shared that she sometimes has to "constantly remind [V.M.C.] to stay on-task," but that V.M.C. is a "very smart student." *See id.* Mr. Patrick, V.M.C.'s senior chorus teacher, stated that V.M.C. "does not have any problems in [s]enior [c]horus." *See id.* Mr. Richard, V.M.C.'s algebra teacher, shared that V.M.C. "often appears depressed and despondent" but she "applies herself academically." *See id.* Finally, Ms. Degarmo, V.M.C.'s case manager, reports that V.M.C. "needs support organizationally" but is a "strong student and is doing well in her classes." *See id.* Considering all the evidence, the Court finds that the new evidence does not support Plaintiff's argument that V.M.C. now experiences "far greater problems in functioning" and that V.M.C.'s functioning across several domains is now "markedly impaired."

With regard to the statement of V.M.C.'s mother, the Court finds that it is not material and is cumulative of what is already in the record. Plaintiff states that V.M.C. is scheduled to take more tutorial classes and attests that V.M.C. is "in danger of failing Earth science." *See id.* at 1272. The ALJ took into consideration the fact that V.M.C. "is again receiving special education services." *See id.* at 432. The Court, therefore, finds that this handwritten letter is not material because it does not present a reasonable possibility that it would influence the ALJ to decide V.M.C.'s application differently.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 9, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 14, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's final decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: August 27, 2018
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge